

November 30, 2022

Office of Information Programs and Services (IPS)
A/GIS/IPS/RL
U.S. Department of State, State Annex 2 (SA-2)
515 22nd Street, NW
Washington, DC 20522-8100
Telephone: (202) 261-8484
Facsimile: (202) 261-8579

**RE:   FOIA Request Regarding Appointment of New Special Representative for Palestinian Affairs and Related Issues**

Dear FOIA Officer:

This letter is a request ("Request") in accordance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the corresponding department/agency implementing regulations. The Request is made by the American Center for Law and Justice ("ACLJ")[1] on behalf of its members.

To summarize, this Request seeks records pertaining to the creation of the new position entitled Special Representative for Palestinian Affairs within the Bureau of Near Eastern Affairs (NEA), the scope of duties for that new position, at whose orders or request that new position was created, the appointment specifically of Hady Amr to that new position, and any steps taken in this process to ensure this new position does not hurt the interests of the United States' key ally, Israel.

## Background

Pursuant to State Department FOIA regulation 22 C.F.R. § 171.4(b), this Background addresses "the subject, timeframe, names of any individuals involved, a contract number (if applicable), and reasons why the requester believes the Department may have records on the subject of the request." 22 C.F.R. § 171.4(b).

---

[1] The ACLJ is a not-for-profit 501(c)(3) organization dedicated to the defense of constitutional liberties secured by law. The ACLJ regularly monitors governmental activity and works to inform the public of such affairs. The ACLJ and its global affiliated organizations are committed to ensuring governmental accountability and the ongoing viability of freedom and liberty in the United States and around the world.

*201 Maryland Avenue, N.E.*
*Washington, DC 20002*
*202-546-8890*

According to a report over the weekend, the State Department has created a new position entitled Special Representative for Palestinian Affairs, and appointed Hady Amr to fill that position.[2] Amr will work under the authority of the Secretary of Near Eastern Affairs and that Bureau (NEA),[3] which is under the Under Secretary for Political Affairs (P). According to the report, Amr "served in the last two years as deputy assistant secretary of state for Israeli-Palestinian affairs."[4]

According to Axios, "The U.S. diplomats at the Jerusalem-based Office of Palestinian Affairs will work closely with the special representative."[5] Further, "'The Washington-based Special Representative for Palestinian Affairs will engage closely with the Palestinians and their leadership and, together with Ambassador [Thomas] Nides and his team, continue to engage with Israel on Palestinian-related issues,' the State Department official said."[6]

Also according to Axios, "Two U.S. and Palestinian officials said this move was several months in the making."[7] Importantly, "The creation of the new post is also meant to upgrade the U.S.-Palestinian relationship and diplomatic representation as much as possible given the U.S. consulate in Jerusalem, which served as the U.S. diplomatic mission to the Palestinians, has yet to reopen, according to a U.S. official."[8]

The story continues: "Former U.S. special envoy for Israeli-Palestinian peace Martin Indyk told Axios the move sends a signal to the Palestinians of their importance at a time when the Jerusalem Consulate remains closed and there's no Palestinian Liberation Office office [sic] in Washington. The Trump administration closed the Washington PLO office in 2018."[9] And,

> Palestinian President Mahmoud Abbas had reservations about it at first, but in recent weeks made it clear that the Palestinian Authority agreed with the decision and will work with Amr, according to the Palestinian source. The State Department notified the outgoing Israeli government about the move and also updated incoming Prime Minister Benjamin Netanyahu and his advisers in advance, the U.S. official said.[10]

Axios quotes Indyk as saying that, "[b]ecause Hady is known and trusted by the Secretary of State and other senior officials, he will have access and influence at the highest level."[11]

In sum, the position is a significant one. Amr will have access and influence at the highest level. It appears from the reporting that the United States consulted with the Palestinian Authority's President Mahmoud Abbas concerning the position, though apparently only notified Israel's

---

[2] Barak Ravid, *Scoop: U.S. Creates Special Representative Post Focused Solely on Palestinian Affairs*, AXIOS (Nov. 22, 2022), https://www.axios.com/2022/11/22/us-palestinian-upgrade-relations-hady-amr.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

outgoing and incoming government. It is apparent that the position's creation is motivated at least in part by the Biden Administration's attempt to reverse Trump Administration policies, including closing the U.S. diplomatic mission in Jerusalem and not allowing the PLO to open an office in Washington, D.C.

The State Department has already posted Amr's biography and new status on its website, noting that "Amr served as the Deputy Assistant Secretary of State for Israeli and Palestinian Affairs from January 2021 to November 2022."[12]

According to the State Department's bio of Amr, Amr "was a scholar with both the Brookings Institution and the Center for a New American Security where he focused on U.S. foreign policy across the Middle East and on human development in the region."[13] Amr's 4-year tenure, from February 2017 to January 2021, as a "Visiting Fellow and Project Director / Nonresident Senior Fellow" at Brookings is also listed on his LinkedIn profile.[14] In 2022, *Politico* reported on concerns raised of Brookings' involvement with and receiving millions of dollars from foreign governments in the Middle East during Amr's tenure there (*e.g.*, "Qatar had become one of Brookings' top donors, netting the institution millions of dollars — and no shortage of flak from critics of Qatar's human-rights record and its friendships towards groups like the Muslim Brotherhood.").[15] Reportedly, another former Brookings Fellow is or was under FBI investigation regarding, allegedly, taking payments from Qatar to influence U.S. policy in the region and a former U.S. ambassador identified as having worked with Allen pled guilty to related charges. According to *Politico*, "Martin Indyk, the former Brookings vice president, . . . championed the establishment of the Doha center" for Brookings, the controversial center Brookings opened in Qatar.

"'What's exciting about this project is that it's a joint project of Brookings and the Qatari Government,' Hady Amr gushed about his old role as the director of the Brookings Doha Center, whose aim he said was to 'inform the American public and American policymakers.'"[16] And,

> Amr was the founding director of the Brookings Doha Center and led it between 2006 and 2010. A Times report noted that the institution had forbidden criticism of Qatar. Lawyers interviewed by the paper suggested that some of Brookings' work with foreign governments merited "registration as foreign agents." Brookings has not only not done so, its key personnel, like Amr, have gone on to work in important United States government positions.[17]

---

[12] *Hady Amr*, STATE.GOV https://www.state.gov/biographies/hady-amr/ (last visited Nov. 28, 2022).
[13] *Id.*
[14] *Hady Amr*, LINKEDIN https://www.linkedin.com/in/hady-amr-5aa997/?original_referer=https%3A%2F%2Fduckduckgo.com%2F (last visited Nov. 29, 2022).
[15] Michael Shaffer, *He Tried to Reform the Way a Top D.C. Think Tank Gets Money. Now the FBI Is Looking Into Him.*, POLITICO (Jun. 17, 2022) https://www.politico.com/news/magazine/2022/06/17/john-allen-brookings-institution-fbi-qatar-00040380.
[16] Daniel Greenfield, *The Problem with Hady Amr*, JEWISH NEWS SYNDICATE (Feb. 4, 2021) https://www.jns.org/opinion/the-problem-with-hady-amr/.
[17] *Id.*

Also according to reports, "At Brookings Doha, Amr had urged that the 'Muslim Brotherhood organizations across the Muslim World should be engaged.'"[18]

Further, in June 2022,

> the Biden administration closed the Palestinian Affairs Unit operating within the U.S. embassy in Jerusalem, replacing it with a new "Office of Palestinian Affairs" (OPA). While a spokesman tried to downplay the significance of the move—framing it as merely overturning a Trump-era decision and referring to it as just a "name change"—it actually established a new and independent reporting line directly to Washington, D.C., outside of the normal diplomatic channels.[19]

Legal issues have been raised about this move:

> There is no other place in the world in which the U.S. maintains both an official embassy and a separate office reporting directly to Washington in the exact same city—and the opening of the OPA, a de facto consulate, signals that the Biden administration is treating Jerusalem as if it is not one, but two distinct cities. Doing so is illegal under the plain terms of the Jerusalem Embassy Act of 1995, which provides that "Jerusalem should remain an undivided city" (and which was passed, incidentally, by an overwhelming bipartisan consensus in both houses of Congress). The move is also likely illegal under Articles 4, 7 and 8 of the 1963 Vienna Convention on Consular Relations, which require a receiving state (Israel) to give consent and approval before a foreign consulate may be established in its sovereign territory. . . . The announcement came just days before Assistant Secretary of State for Near Eastern Affairs Barbara Leaf (to whom the OPA will now report on "substantive matters") met with Palestinian Authority (PA) President Mahmoud Abbas for discussions on increasing U.S.-Palestinian assistance. As such, the opening of the new office, which is clearly designed to help facilitate that aid, is also illegal under the 2018 Taylor Force Act, another law passed by a massive bipartisan congressional consensus. That law put a hold on any assistance that directly benefits the PA unless and until the PA stops paying terrorists to kill American and Israeli citizens. Both Abbas and Biden's own State Department recently confirmed that the PA has yet to do that.[20]

Amr has made news headlines over his previous comments about Israel and the Palestinians: "I was inspired by the Palestinian intifada," Hady Amr wrote a year after Sept. 11, 2001, discussing his work as the national coordinator of the anti-Israel Middle East Justice Network."[21]

---

[18] *Id.*

[19] Mark Goldfeder, *Biden is Undermining the Law and Throwing Israel Under the Bus | Opinion*, Newsweek (Jun. 14, 2022) https://www.newsweek.com/biden-undermining-law-throwing-israel-under-bus-opinion-1715063.

[20] *Id.*

[21] Daniel Greenfield, *The Problem with Hady Amr*, JEWISH NEWS SYNDICATE (Feb. 4, 2021) https://www.jns.org/opinion/the-problem-with-hady-amr/.

"I have news for every Israeli," Amr ranted in a column written after Sheikh Salah Shahada, the head of Hamas's Izz ad-Din al-Qassam Brigades, was taken out by an Israeli airstrike in 2002.

Amr warned that Arabs "now have televisions, and they will never, never forget what the Israeli people, the Israeli military and Israeli democracy have done to Palestinian children. And there will be thousands who will seek to avenge these brutal murders of innocents."

He also threatened Americans that "we, too, shouldn't be shocked when our military assistance to Israel and our security council vetoes that keep on protecting Israel come back to haunt us."[22]

For context, "The future State Department official was making these threats less than a year after 9/11."[23]

Multiple media outlets are reporting on the story of Amr's appointment to this new position.[24]

### Records Requested

For purposes of this Request, the term "record" means "any information" that qualifies under 5 U.S.C. § 552(f), and includes, but is not limited to, the original or any full, complete and unedited copy of any log, chart, list, memorandum, note, correspondence, writing of any kind, policy, procedure, guideline, agenda, handout, report, transcript, set of minutes or notes, video, photo, audio recordings, or other material. The term "record" also includes, but is not limited to, all relevant information created, stored, received or delivered in any electronic or digital format, *e.g.*, electronic mail, instant messaging or Facebook Messenger, iMessage, text messages or any other means of communication, and any information generated, sent, received, reviewed, stored or located on a government *or private* account or server, consistent with the holdings of *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145 (D.C. Cir. 2016) (rejecting agency argument that emails on private email account were not under agency control, and holding, "If a department head can deprive the citizens of their right to know what his department is up to by the simple expedient of maintaining his departmental emails on an account in another domain, that purpose is hardly served.").

---

[22] *Id.*

[23] *Id.*

[24] All Arab News Staff, *Biden Names Special Representative for Palestinian Affairs*, NEWSMAX (Nov. 25, 2022) https://www.newsmax.com/world/globaltalk/biden-administration-palestine-hady-amr/2022/11/25/id/1097903/; *see also* Betham McKernan, *Biden Upgrades US-Palestinian Relations by Naming Special Representative*, THE GUARDIAN (Nov. 23, 2022), https://www.theguardian.com/us-news/2022/nov/23/biden-upgrades-us-palestinian-relations-by-naming-special-representative ; Melanie Phillips, *The Humbug of the West Over Murdered Israelis*, ISRAELTODAY.CO.IL. (Nov. 25, 2022) https://www.israeltoday.co.il/read/the-humbug-of-the-west-over-murdered-israelis/ ; Omri Nahmias, *US Appoints Special Representative for Palestinian Affairs*, THE JERUSALEM POST (Nov. 23, 2022) https://www.jpost.com/international/article-723173 ; *Velshi: Biden Has the Tools to Fix Ties with the Palestinians. It's Time to Act.*, YAHOO NEWS (Nov. 26, 2022) https://news.yahoo.com/velshi-biden-tools-fix-ties-154950367.html.

All requests seek records which include, but are not limited to, any record located on backup tapes, archives, any other recovery, backup, storage or retrieval system, DOS electronic mail or message accounts, non-DOS electronic mail or message accounts, personal electronic mail or message accounts, DOS servers, non-DOS servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

For purposes of this Request, the term "briefing" includes, but is not limited to, any in-person meeting, teleconference, electronic communication, or other means of gathering or communicating by which information was conveyed to one or more person(s).

For purposes of this Request, the term "DOS official" includes, but is not limited to, any person who is (1) employed by or on behalf of the DOS, any Mission of the United States, or any Delegation of the United States, in any capacity; (2) contracted for services by or on behalf of the DOS, any Mission of the United States, or any Delegation of the United States, in any capacity; (3) appointed by the President of the United States to serve in any capacity at or within the DOS, any Mission of the United States, or any Delegation of the United States; or (4) any such person's staff, agent or employee; all without regard to the component, bureau, or office in which that person serves.

For purposes of this Request, all sources, documents, letters, reports, briefings, articles and press releases cited in this Request are incorporated by reference as if fully set forth herein.

**For purposes of this Request, any individual or entity's name includes any alias or pseudonym.**

**For purposes of this Request, and unless otherwise indicated, the timeframe of records requested herein is January 20, 2021, to the date this request is processed.**

Pursuant to FOIA, 5 U.S.C. § 552 *et seq.*, ACLJ hereby requests that the DOS produce the following:

1.      The English text of this webpage: https://palestinianaffairs.state.gov/

2.      **The applicable Foreign Affairs Manual and Foreign Affairs Handbook for the new position of Special Representative for Palestinian Affairs.**

3.      **All records of Secretary of State Antony Blinken's (including but not limited to that of his immediate subordinates, assistants, liaisons, secretaries, designates, or any other person communicating on his behalf) communications about the creation of the Special Representative for Palestinian Affairs or Amr's appointment to that position, including but not limited to emails or text messages with Martin Indyk.**

4. All records of communications between Secretary of State Antony Blinken and Hady Amr (including but not limited to that of their immediate subordinates, assistants, liaisons, secretaries, designates, or any other person communicating on their behalf).

5. All records of Amr's communications with any DOS official at a GS-13 level or higher or an appointee within the Secretary's Office (S) (including but not limited to that of immediate subordinates, assistants, liaisons, secretaries, designates, or any other person communicating on another's behalf), about:

    (a) the new position, Special Representative for Palestinian Affairs, or his appointment to it;
    (b) Israel;
    (c) the Palestinian Authority (PA); or,
    (d) the Palestinian Liberation Organization (PLO).

6. All records of Amr's communications with any DOS official at a GS-13 level or higher or an appointee within the office of the Under Secretary of Political Affairs (including but not limited to that of immediate subordinates, assistants, liaisons, secretaries, designates, or any other person communicating on another's behalf) about:

    (a) the new position, Special Representative for Palestinian Affairs, or Amr's appointment to it;
    (b) Israel;
    (c) the Palestinian Authority (PA); or,
    (d) the Palestinian Liberation Organization (PLO).

7. All records of Amr's communications with any DOS official at a GS-13 level or higher or an appointee within the office of the Under Secretary of Political Affairs, the Deputy Secretary's Office (D), or the Chief of Staff's Office (COS) (including but not limited to that of immediate subordinates, assistants, liaisons, secretaries, designates, or any other person communicating on another's behalf) about:

    (a) the new position, Special Representative for Palestinian Affairs, or Amr's appointment to it;
    (b) Israel;
    (c) the Palestinian Authority (PA); or,
    (d) the Palestinian Liberation Organization (PLO).

8. All records, communications or briefings created, generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by any DOS official within the Bureau of Near Eastern Affairs (NEA) at a GS-13 level or higher or an appointee, including but not limited to Assistant Secretary Barbara Leaf or her predecessor Acting Assistant Secretaries Joey Hood or Yael Lempert (including but not limited to that of immediate subordinates, assistants, liaisons, secretaries, designates, or any other person communicating on another's behalf), about the new position of Special Representative for Palestinian Affairs, or Amr's appointment to it.

9. All records, communications or briefings created, generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by any DOS official within the U.S. Embassy in Israel at a GS-13 level or higher or an appointee (including but not limited to that of immediate subordinates, assistants, liaisons, secretaries, designates, or any other person communicating on another's behalf), including but not limited to Ambassador Thomas Nides, about the new position of Special Representative for Palestinian Affairs, or Amr's appointment to it.

10. All records, communications or briefings created, generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by any DOS official at a GS-13 level or higher or an appointee within the Secretary's Office (S), the office of the Under Secretary of Political Affairs, the Deputy Secretary's Office (D), the Chief of Staff's Office (COS), or the Bureau of Near Eastern Affairs (NEA) (including but not limited to that of immediate subordinates, assistants, liaisons, secretaries, designates, or any other person communicating on another's behalf), discussing the legality of the Office of Palestinian Affairs (OPA) – or the establishment of a Special Representative for Palestinian Affairs which will work closely with the OPA – under U.S. law or treaties, including the Taylor Force Act, Articles 4, 7 and 8 of the 1963 Vienna Convention on Consular Relations, or the Jerusalem Embassy Act of 1995 (legitimate attorney-client privileged communications should be privileged logged or identified in a Vaughn Index).

11. All records, communications or briefings created, generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by any DOS official at a GS-13 level or higher or an appointee within the Secretary's Office (S), the office of the Under Secretary of Political Affairs, the Deputy Secretary's Office (D), the Chief of Staff's Office (COS), or the Bureau of Near Eastern Affairs (NEA) (including but not limited to that of immediate subordinates, assistants, liaisons, secretaries, designates, or any other person communicating on another's behalf), discussing Amr's tenure at the Brookings Institution and any funding received by the Brookings Institution or its Fellows from foreign governments, including but not limited to Qatar, during Amr's tenure there.

12. All records, communications or briefings created, generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by any DOS official at a GS-13 level or higher or an appointee within the Secretary's Office (S), the office of the Under Secretary of Political Affairs, the Deputy Secretary's Office (D), the Chief of Staff's Office (COS), or the Bureau of Near Eastern Affairs (NEA) (including but not limited to that of immediate subordinates, assistants, liaisons, secretaries, designates, or any other person communicating on another's behalf), discussing Amr's involvement with the Brookings Doha Center in Qatar and its closure right around the time Amr returned to the State Department.

13. All records, communications or briefings created, generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by any DOS official at a GS-13 level or higher or an appointee within the Secretary's Office (S), the office of the Under Secretary of Political Affairs, the Deputy Secretary's Office (D), the Chief of Staff's Office (COS), or the Bureau of Near Eastern Affairs (NEA) (including but not limited to that of immediate subordinates,

assistants, liaisons, secretaries, designates, or any other person communicating on another's behalf), discussing Amr's previous negative comments about Israel, the Palestinian Intifada, Israeli-Palestinian conflict, American funding and Security Council vetoes "coming back to haunt us," or any other comments demonstrating his stance toward Israel.

14. All communications or other records sent from February 2017 to January 20, 2021, between Amr and any DOS official at a GS-13 level or higher or an appointee within the Secretary's Office (S), the office of the Under Secretary of Political Affairs, the Deputy Secretary's Office (D), the Chief of Staff's Office (COS), or the Bureau of Near Eastern Affairs (NEA) (including but not limited to that of immediate subordinates, assistants, liaisons, secretaries, designates, or any other person communicating on another's behalf), discussing Qatar, Israel, Palestine, the PA, the PLO, Hamas, Hezbollah, the Muslim Brotherhood, or Iran.

15. All communications or other records sent to or between Martin Indyk from February 2017 to the date this FOIA is processed, and any DOS official at a GS-13 level or higher or an appointee within the Secretary's Office (S), the office of the Under Secretary of Political Affairs, the Deputy Secretary's Office (D), the Chief of Staff's Office (COS), or the Bureau of Near Eastern Affairs (NEA) (including but not limited to that of immediate subordinates, assistants, liaisons, secretaries, designates, or any other person communicating on another's behalf), discussing Hady Amer, Qatar, Israel, Palestine, the PA, the PLO, Hamas, Hezbollah, the Muslim Brotherhood, or Iran.

16. All records of the Under Secretary for Management (M) or any DOS official at a GS-13 level or higher or an appointee within that office (including but not limited to that of his immediate subordinates, assistants, liaisons, secretaries, designates, or any other person communicating on his behalf) about or mentioning the creation of the Special Representative for Palestinian Affairs or Hady Amr, including <u>but not limited to</u> emails or text messages with Martin Indyk or anyone at or associated with the Brooking Institution.

17. All records of the Counselor (C) or any DOS official at a GS-13 level or higher or an appointee within that office (including but not limited to that of his immediate subordinates, assistants, liaisons, secretaries, designates, or any other person communicating on his behalf) about or mentioning the creation of the Special Representative for Palestinian Affairs or Hady Amr, including <u>but not limited to</u> emails or text messages with Martin Indyk or anyone at or associated with the Brooking Institution.

## CONCLUSION

If this Request is denied in whole or in part, the ACLJ requests that, within the time requirements imposed by FOIA, you support all denials by reference to specific FOIA exemptions and provide any judicially required explanatory information, including but not limited to, a *Vaughn* Index.

Thank you for your prompt consideration of this Request. Please furnish all applicable records and direct any responses to:

Jordan Sekulow, Executive Director  
Benjamin P. Sisney, Senior Litigation Counsel  
John A. Monaghan, Senior Litigation Counsel  
American Center for Law and Justice  
201 Maryland Ave., NE  
Washington, D.C. 20002-5703  
(202) 546-8890; (202) 546-9309 (fax)

foia-response@aclj.org  
bsisney@aclj.org  
jmonaghan@aclj.org

I affirm that the foregoing request and attached documentation are true and correct to the best of my knowledge and belief.

Respectfully submitted,

Jordan Sekulow  
Executive Director

Benjamin P. Sisney  
Senior Litigation Counsel

John A Monaghan  
Senior Litigation Counsel